# Illinois Official Reports

## Appellate Court

***Con-Way Freight, Inc. v. Illinois Workers' Compensation Comm'n*,
2016 IL App (1st) 152576WC**

| | |
|---|---|
| Appellate Court Caption | CON-WAY FREIGHT, INC., Appellant, v. THE ILLINOIS WORKERS' COMPENSATION COMMISSION *et al.* (Robert Armstrong, Appellee). |
| District & No. | First District, Workers' Compensation Commission Division Docket No. 1-15-2576WC |
| Filed | November 10, 2016 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 2015-L-50168; the Hon. Kay Marie Hanlon, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Mark P. Rusin and Amy M. Doig, of Rusin & Maciorowski, Ltd., of Chicago, for appellant. <br><br> Michael J. Brandenberg, of Krol, Bongiorno & Given, Ltd., of Chicago, for appellee. |
| Panel | JUSTICE STEWART delivered the judgment of the court, with opinion. <br> Presiding Justice Holdridge and Justices Hoffman, Hudson, and Harris concurred in the judgment and opinion. |

**OPINION**

¶ 1      The claimant, Robert Armstrong, was employed as a "line haul" truck driver for the employer, Con-Way Freight, Inc., when he was involved in a workplace accident. He filed a claim pursuant to the Illinois Workers' Compensation Act (Act) (820 ILCS 305/1 *et seq.* (West 2012)), claiming injuries to both of his feet. An arbitrator awarded the claimant benefits under the Act, including permanent partial disability (PPD) benefits for 30% loss of the right foot and 8% loss of the left foot. The employer sought review of the arbitrator's decision before the Illinois Workers' Compensation Commission (Commission). The sole issue that the employer raised before the Commission concerned the nature and extent of the claimant's permanent partial disability. The Commission corrected a calculation error in the arbitrator's decision but otherwise affirmed and adopted the decision. The employer sought review of the Commission's decision before the circuit court. The circuit court entered a judgment confirming the Commission's decision. The employer now appeals the circuit court's judgment.

¶ 2                                                    BACKGROUND

¶ 3      It is undisputed that the claimant was involved in a workplace accident on December 8, 2011, when a dolly weighing several thousand pounds ran over both of his feet while he was assisting another driver. At the time of the accident, he was 42 years old. He was taken to the emergency room, where X-rays showed that he had sustained fractures to the right fourth and fifth metatarsals, a dislocation of the proximal interphalangeal joints of the fifth toe on the right side, and a fracture of the cuboid and proximal phalanx of the left foot. That same day, Dr. Surender Dhiman, an orthopedic surgeon, performed surgery on the claimant's right foot. Two surgical screws were placed in the claimant's foot.

¶ 4      Following the surgery, the claimant followed up with Dr. Dhiman approximately once per month. Dr. Dhiman released the claimant to return to light duty work on March 27, 2012, and discharged the claimant from his care, releasing the claimant to work full duty beginning April 4, 2012. Dr. Dhiman noted that the claimant had completed his physical therapy and was improving. He believed that the claimant could resume driving trucks. The claimant returned to work full duty on April 5, 2012.

¶ 5      On June 25, 2012, the claimant returned to Dr. Dhiman with complaints of occasional aching on the side of his right foot. X-rays revealed healing of the claimant's fractures. The claimant returned to Dr. Dhiman in December 2012 with complaints that the two screws that had been placed in his right foot were causing him pain. The doctor performed a screw removal surgery on December 27, 2012. The doctor removed only one of the screws in the claimant's right foot and left a second screw in place. Following the screw removal surgery, on January 14, 2013, Dr. Dhiman released the claimant back to work full duty.

¶ 6      The claimant last saw Dr. Dhiman on March 4, 2013. He complained of some induration and tenderness in the area of the surgical scar on his right foot. The doctor released the claimant from his care, and there is no evidence that the claimant has sought any further medical care for any foot problems since his last visit with Dr. Dhiman.

¶ 7      The claimant's job duties require him to drive a truck on a daily basis from Bridgeview, Illinois, to Tomah, Wisconsin. The job description indicates that he is required to perform

heavy job duties, including loading and unloading heavy objects, some weighing over 75 pounds. The claimant testified that he has to manually manipulate heavy freight, operate a forklift, and drive 10- to 12-hour shifts, approximately 500 miles round trip per day. At the time of the arbitration hearing, he was earning more money than he had prior to the accident.

¶ 8    The claimant testified that, since returning to work full duty after the accident, he has noticed an increase in pain and other symptoms in his right foot. He testified that his right foot is always in pain and that he has a constant throbbing sensation. The pain is worse during cold weather, when driving long distances, and when pressing the foot pedals of the truck. For pain relief, he removes his boot while driving and takes over-the-counter medication on a regular basis. He testified that when he walks his dog he is unable to walk as far as he did prior to the accident because of pain in his right foot. His right foot swells with overuse, and his work shoes feel tighter. He cannot jog or hop on his right foot without pain. With respect to his left foot, he stated that he has a constant tingling sensation from the top of the foot, near the fifth toe, to the middle-arch area of the foot. He has a loss in the range of motion in the fifth toe, and the left side at the top of the foot feels numb. He testified that his right foot pain is worse than his left foot pain.

¶ 9    On June 24, 2013, at the employer's request, the claimant submitted to a medical examination conducted by an orthopedic surgeon, Dr. Mark Levin. According to Dr. Levin's report, the claimant told the doctor that his left foot pain had totally resolved and that he had good healing. He stated that he had an achy sensation in his right foot over the fourth and fifth metatarsal areas during cold weather. He told Dr. Levin that he drove with no shoe on his right foot because he gets a throbbing sensation in the metatarsals. The doctor wrote, "By the end of his shift, he can get pain varying anywhere from 2/10 up to 4 to 5/10." He noted that the claimant took over-the-counter Aleve on an as-needed basis, was working full duty, and could perform all of his work activities with no problems, including driving a forklift and all of the other job activities that he could perform prior to the accident.

¶ 10    Pursuant to section 8.1b of the Act (820 ILCS 305/8.1b (West 2012)), Dr. Levin offered an impairment rating based on the American Medical Association (AMA) Guides. With respect to the claimant's left foot, he opined that the claimant suffered no impairment and no objective deficiency pursuant to the AMA Guides. With respect to the claimant's right foot, he opined that the claimant sustained a 4% impairment.

¶ 11    At the conclusion of the hearing, the arbitrator found that the claimant sustained a 30% permanent loss of the right foot and an 8% permanent loss of the left foot. In determining the proper PPD award, the arbitrator noted each of the five factors enumerated in section 8.1b and made specific findings with respect to each factor.

¶ 12    The arbitrator began his analysis by noting Dr. Levin's impairment rating (820 ILCS 305/8.1b(b)(i) (West 2012)). With regard to the claimant's occupation (820 ILCS 305/8.1b(b)(ii) (West 2012)), the arbitrator found that it required heavy work and that the claimant's PPD award may be larger than an individual who performs lighter work. With regard to the claimant's age (820 ILCS 305/8.1b(b)(iii) (West 2012)), the arbitrator found that he was 44 years old and, therefore, was approaching middle age. The arbitrator concluded that the claimant may have to live and work with the disability for a longer period than an older individual with the same injuries and that he "may just as likely recover from his injury more quickly than an older worker." With regard to the claimant's future earning capacity (820 ILCS 305/8.1b(b)(iv) (West 2012)), the arbitrator found that there was no

evidence that his future earning capacity was diminished as a result of the injury. With regard to evidence of disability corroborated by medical records (820 ILCS 305/8.1(b)(v) (West 2012)), the arbitrator noted the medical treatments following the accident as well as the claimant's continued pain following his treatments.

¶ 13    The arbitrator concluded as follows: "[A]fter applying Section 8.1b of the Act, 820 ILCS 305/8.1b and considering the relevance and weight of all these factors, including Dr. Levin's AMA impairment rating, the Arbitrator concludes that [the claimant] has sustained a 30% permanent loss of the right foot and an 8% permanent loss of the left foot."

¶ 14    On review, the Commission corrected a calculation error in the arbitrator's decision but otherwise affirmed and adopted the decision. The circuit court, on review, entered a judgment that confirmed the Commission's decision, finding that the decision is not contrary to law and is not against the manifest weight of the evidence. The employer now appeals the circuit court's judgment and challenges the Commission's application of section 8.1b of the Act in determining the claimant's PPD benefits.

¶ 15                                   ANALYSIS

¶ 16    On appeal, the employer argues that the Commission's award should be set aside as a matter of law due to the Commission's failure to comply with section 8.1b of the Act (820 ILCS 305/8.1b (West 2012)). Section 8.1b of the Act provides as follows:

> "For accidental injuries that occur on or after September 1, 2011, [PPD] shall be established using the following criteria:
>
>     (a) A physician licensed to practice medicine in all of its branches preparing a [PPD] impairment report shall report the level of impairment in writing. The report shall include an evaluation of medically defined and professionally appropriate measurements of impairment that include, but are not limited to: loss of range of motion; loss of strength; measured atrophy of tissue mass consistent with the injury; and any other measurements that establish the nature and extent of the impairment. The most current edition of the [AMA's] 'Guides to the Evaluation of Permanent Impairment' shall be used by the physician in determining the level of impairment.
>
>     (b) In determining the level of [PPD], the Commission shall base its determination on the following factors: (i) the reported level of impairment pursuant to subsection (a); (ii) the occupation of the injured employee; (iii) the age of the employee at the time of the injury; (iv) the employee's future earning capacity; and (v) evidence of disability corroborated by the treating medical records. No single enumerated factor shall be the sole determinant of disability. In determining the level of disability, the relevance and weight of any factors used in addition to the level of impairment as reported by the physician must be explained in a written order." 820 ILCS 305/8.1b (West 2012).

¶ 17    The employer argues that the plain and ordinary meaning of the language of section 8.1b "requires the impairment rating to be the *primary factor* to be considered in establishing [PPD]." (Emphasis added.) The employer contends that, under this plain language, the other four factors can either increase or decrease the impairment rating, but the impairment rating must be given primary significance. The employer argues that we must reduce the Commission's PPD award in the present case because the Commission ignored Dr. Levin's

- 4 -

impairment rating and the impairment rating was not the "primary factor" considered by the Commission. The employer suggests that, as a matter of law, a PPD award of only 5 to 10% loss of use of the right foot and 0% loss of use of the left foot is appropriate. We disagree with the employer's argument.

¶ 18 Whether section 8.1b of the Act requires the impairment rating to be the "primary factor" that the Commission must consider in determining the amount of a PPD award involves a question of statutory interpretation. A legal question involving the construction of a statute presents an issue that we review *de novo*. *Cassens Transport Co. v. Illinois Industrial Comm'n*, 218 Ill. 2d 519, 524, 844 N.E.2d 414, 418 (2006). "In interpreting the Act, our primary goal is to ascertain and give effect to the intent of the legislature." *Id.* at 524, 844 N.E.2d at 419. "The language used in the statute is normally the best indicator of what the legislature intended," and "[e]ach undefined word in the statute must be given its ordinary and popularly understood meaning." *Gruszeczka v. Illinois Workers' Compensation Comm'n*, 2013 IL 114212, ¶ 12, 992 N.E.2d 1234. "[W]here the statutory language is clear, it will be given effect without resort to other aids for construction." *Id.*

¶ 19 In *Continental Tire of the Americas, LLC v. Illinois Workers' Compensation Comm'n*, 2015 IL App (5th) 140445WC, 43 N.E.3d 556, we held that the plain language of section 8.1b does not require the claimant to submit an impairment report. *Id.* ¶ 17. Looking at the language of the statute, we held that section 8.1b(b) requires "that the Commission, in determining the level of the claimant's permanent partial disability, consider a report that complies with subsection (a), regardless of which party submitted it." *Id.* In addition, we emphasized that section 8.1b does "*not specify the weight that the Commission must give to the physician's report*." (Emphasis added.) *Id.*

¶ 20 Likewise, in *Corn Belt Energy Corp. v. Illinois Workers' Compensation Comm'n*, 2016 IL App (3d) 150311WC, 56 N.E.3d 1101, we again analyzed the plain language of section 8.1b and held that the statute does not require either party to submit an impairment rating report. We stated that either party may submit an impairment report, and once it is submitted, "it must be considered by the Commission, along with other identified factors, in determining the claimant's level of PPD." *Id.* ¶ 49. However, neither party is required to submit a report.

¶ 21 The language of section 8.1b is not ambiguous. Therefore, as we did in *Continental Tire of the Americas* and in *Corn Belt Energy Corp.*, we must apply the statute as it is written without resorting to other aids for construction, such as legislative history. The plain language of the statute does not support the employer's argument.

¶ 22 As noted above, in determining PPD benefits, section 8.1b(b) directs the Commission to consider: "(i) the reported level of impairment pursuant to subsection (a); (ii) the occupation of the injured employee; (iii) the age of the employee at the time of the injury; (iv) the employee's future earning capacity; and (v) evidence of disability corroborated by the treating medical records." 820 ILCS 305/8.1b(b) (West 2012). Section 8.1b does not specify the weight that the Commission must give to the physician's report. Instead, section 8.1b(b) states that "[n]o single enumerated factor shall be the sole determinant of disability." *Id.*

¶ 23 Nothing within this statutory language allows us to require the Commission to treat the impairment rating as the "primary factor." In fact, such a requirement would be contrary to the plain language of the statute. The Commission is obligated to weigh all of the factors listed within section 8.1b(b) and make a factual finding with respect to the level of the injured worker's permanent partial disability, with no single factor being the sole determinant

of disability. The Commission in the present case properly followed section 8.1b(b)'s requirement by weighing Dr. Levin's report along with the four other listed factors, making specific findings with respect to each enumerated factor. Therefore, the Commission's award does not violate the language of the Act as a matter of law.

¶ 24 The employer bases its argument entirely on an inaccurate statutory construction of section 8.1b. The employer does not offer an alternative argument that the Commission's decision is, nonetheless, against the manifest weight of the evidence even without treating the impairment report as the "primary factor." Therefore, whether the Commission's decision is against the manifest weight of the evidence is not before this court. See Ill. S. Ct. R. 341(h)(7) (eff. Jan. 1, 2016); *Archer Daniels Midland Co. v. City of Chicago*, 294 Ill. App. 3d 186, 190, 689 N.E.2d 392, 395 (1997) (failure to raise an issue in appellant's opening brief results in waiver). Waiver aside, there is no basis in the record to reverse the Commission's decision under the manifest weight of the evidence standard.

¶ 25 The Commission's "findings regarding the nature and extent of a disability will not be set aside unless they are contrary to the manifest weight of the evidence." *Hiram Walker & Sons, Inc. v. Industrial Comm'n*, 71 Ill. 2d 476, 479, 376 N.E.2d 1014, 1016 (1978). In addition, "[i]t is well settled that because of the Commission's expertise in the area of worker's compensation, its findings on the question of the nature and extent of permanent disability should be given substantial deference." *Mobil Oil Corp. v. Industrial Comm'n*, 309 Ill. App. 3d 616, 624, 722 N.E.2d 703, 709 (1999). A decision is against the manifest weight of the evidence when the opposite conclusion is clearly apparent. *Stapleton v. Industrial Comm'n*, 282 Ill. App. 3d 12, 16, 668 N.E.2d 15, 19 (1996). The Commission's decision is not against the manifest weight of the evidence if there is sufficient factual evidence to support it. *Id.*

¶ 26 The record in the present case includes evidence that, since the claimant has returned to work full duty, he has noticed increased pain and other symptoms in his right foot. He testified that the pain worsens in cold weather, when driving long distances, and when pressing his foot on the pedal of the truck. He takes over-the-counter pain medication daily to relieve the pain and removes his boot while driving. The injury has affected his ability to walk his dog as far as he did prior to the accident. He no longer rides his bicycle as much as he used to, and his right foot continually throbs. The claimant also testified that his left foot has a constant tingling sensation, numbness, and a loss of range of motion in the fifth toe.

¶ 27 Although Dr. Levin opined that, under the AMA Guides, the claimant sustained a 4% impairment rating for the right foot and no permanent partial impairment for the left foot, it was up to the Commission to determine what weight to give to Dr. Levin's report. The Commission adopted the arbitrator's analysis, in which the arbitrator evaluated the other four factors listed in section 8.1b, in conjunction with Dr. Levin's report, and made specific finding with respect each of the factors in determining the appropriate amount of PPD benefits.

¶ 28 The Commission found that there was no evidence that the claimant suffered any diminished future earning capacity. The Commission also found, however, that the claimant's position required heavy work and that he was 46 years old and would likely work with his disability for a longer period of time than an older person. The Commission also considered the claimant's medical records, which included evidence of a significant work injury involving right foot fractures that required immediate surgery, physical therapy following the surgery, and a second surgery for the removal of a surgical screw from the foot,

with one screw remaining in the foot as of the date of the hearing. The claimant testified about the lasting effects that he suffers from the accident, including pain and numbness, and his medical records corroborated his testimony with respect to his disability. Nothing in the record would compel us to second-guess the Commission's factual findings with respect to the nature and extent of the claimant's disability under the manifest weight of the evidence standard had the issue been properly raised.

¶ 29                                    CONCLUSION

¶ 30        For the foregoing reasons, we affirm the judgment of the circuit court that confirmed the Commission's decision.

¶ 31        Affirmed.