# Illinois Official Reports

## Appellate Court

---

### *O'Neil v. Illinois Workers' Compensation Comm'n,*
### 2020 IL App (2d) 190427WC

---

| | |
|---|---|
| Appellate Court Caption | JUSTIN O'NEIL, Appellant, v. THE ILLINOIS WORKERS' COMPENSATION COMMISSION *et al.* (JGS Marine, LLC, d/b/a Mastercraft Boats, Appellee). |
| District & No. | Second District, Workers' Compensation Commission Division No. 2-19-0427WC |
| Filed | February 4, 2020 |
| Decision Under Review | Appeal from the Circuit Court of Lake County, No. 18-MR-682; the Hon. Mitchell L. Hoffman, Judge, presiding. |
| Judgment | Affirmed and remanded. |
| Counsel on Appeal | Jason W. Hauck, of Jeep, Jeep & Hauck, P.C., of Waukegan, for appellant. |
| | Steven C. Wolf and Mallory R. Barrett, of Wolf & Laudicina, Ltd., of Chicago, for appellee. |

Panel JUSTICE HUDSON delivered the judgment of the court, with opinion.
Justices Hoffman, Cavanagh, and Barberis concurred in the judgment and opinion.
Presiding Justice Holdridge dissented, with opinion.

**OPINION**

¶ 1    Claimant, Justin O'Neil, appeals from an order of the circuit court of Lake County that confirmed a decision of the Illinois Workers' Compensation Commission (Commission) that reversed an award of attorney fees and penalties assessed by the arbitrator against respondent, JGS Marine, LLC, d/b/a Mastercraft Boats. The Commission, relying in part on our opinion in *Hollywood Casino-Aurora, Inc. v. Illinois Workers' Compensation Comm'n*, 2012 IL App (2d) 110426WC, concluded that it was without statutory authority to award attorney fees and penalties pursuant to sections 16 and 19(*l*) of the Workers' Compensation Act (Act) (820 ILCS 305/16, 19(*l*) (West 2016)) based on respondent's decision to revoke authorization for surgery to claimant's right knee. For the reasons set forth below, we affirm.

¶ 2                          I. BACKGROUND

¶ 3    On October 13, 2016, claimant filed an application for adjustment of claim alleging that he sustained an injury to his right knee on February 11, 2016, while working for respondent. The matter proceeded to an arbitration hearing pursuant to section 19(b) of the Act (820 ILCS 305/19(b) (West 2016)) before Arbitrator Gregory Dollison. The following summary is taken from the evidence presented at that hearing, which was held on May 15, 2017.

¶ 4    Claimant was employed by respondent as a marine technician. In this capacity, claimant's duties included mechanical work, the installation of boat accessories, and general boat maintenance. On February 11, 2016, claimant was installing a swim platform on the back of a boat. While positioning the platform onto support brackets, claimant lowered his right knee onto the concrete floor below. As claimant came down on his right knee, he "felt a pop and then a sharp pain" and immediately twisted his knee in response. The parties stipulated to the accident but disputed causal connection.

¶ 5    Claimant testified that he attempted to finish his shift the day of the accident (a Thursday), but respondent had him go home to rest. Claimant's pain was a little worse the day after the accident, so he stayed at home to ice and elevate his leg. On Saturday, February 13, 2016, claimant, a veteran of the United States Navy, sought medical care for his right knee at a Veteran's Administration (VA) facility. Claimant was diagnosed with prepatellar bursitis. The treatment plan consisted of a pull-on sleeve, ice, elevation, and pain medication. Claimant returned to work the Monday following the injury, explaining that he "tried to tough it out" because he did not want to lose his job. Thereafter, claimant experienced ongoing knee pain and swelling and was referred for an orthopaedic consultation by medical personnel at the VA facility. The consulting orthopaedic physician agreed with the diagnosis of prepatellar bursitis. The doctor did not recommend aspiration or surgery at that time and instructed claimant to return on an as-needed basis.

¶ 6      During the months that followed, claimant continued to retain fluid in his right knee, and although the amount of fluid fluctuated, the knee would occasionally approach the size of a racquetball. After four months, claimant told respondent that he wanted to see a physician. Respondent authorized claimant to seek treatment at Advocate Occupational Health, where he was examined by Cheryl Culberson, an advanced practice nurse. Culberson diagnosed prepatellar bursitis, prescribed conservative treatment, authorized claimant to return to work without restrictions, and referred claimant to Dr. Roger Chams, an orthopaedic surgeon at the Illinois Bone and Joint Institute. Claimant saw Dr. Chams on June 21, 2016. At that time, Dr. Chams noted that claimant continued to have swelling at the anterior aspect of the right knee as well as pain deep to the patella. Dr. Chams diagnosed prepatellar bursitis and noted that claimant's injury was work related. He aspirated 20 milliliters of fluid from the right knee and administered a steroid injection. Dr. Chams also prescribed an MRI to rule out a meniscal injury. Dr. Chams authorized claimant to work full duty with the caveat that he be allowed to rest or be excused from work for complaints of knee pain.

¶ 7      When claimant returned to Dr. Chams on July 5, 2016, he reported that the aspiration and injection only provided temporary relief from his symptoms. Dr. Chams noted that the MRI revealed evidence of prepatellar bursitis with mild chondromalacia of the patella and a small joint effusion with no meniscal tear. Dr. Chams instructed claimant to avoid painful positions and activities. To this end, Dr. Chams placed claimant on "light duty and light kneeling." In the months that followed, claimant continued to treat with Dr. Chams. During that time, Dr. Chams repeatedly aspirated the right knee, administered another injection, and ordered a second MRI. The repeat MRI demonstrated a significant prepatellar bursal inflammation as well as some mild chondromalacia and a lateral tilt of the kneecap. Ultimately, Dr. Chams recommended surgery consisting of a right knee arthroscopy and open removal of the prepatellar bursa.

¶ 8      On October 10, 2016, respondent's insurance carrier approved the surgery proposed by Dr. Chams. Claimant testified that he delayed the surgery because he was the only marine technician and respondent was "very busy." Claimant intended to proceed with the surgery in the winter when work was not as hectic. On December 2, 2016, Dr. Chams recorded that the proposed surgery was scheduled for December 17, 2016. On December 8, 2016, Dr. Chams received notification that respondent's insurance carrier had revoked the surgery authorization for claimant, citing the need for an "[a]dditional investigation."

¶ 9      Claimant testified that he was told that respondent revoked authorization for the surgery because of a note in the VA records referencing a prior procedure to his right knee in 2001. That note, dated February 13, 2016, provides as follows:

> "[Patient] was informed that I will be his corpsmen[[*sic*].] [P]laced on hospital gown/orient to his room[.] [W]arm blankets and call lights given/side rails up[.] [A]waiting to be seen by ER MD/*[patient] states this happened in 2001 when he was active duty—performed surgery on knee, which [patient] describes as a incision [sic] and drainage*[.]" (Emphasis added.)

The note was signed by Corpsman Nicholas Blackmond, who claimant described as "a check-in person" at the VA facility.

¶ 10      Claimant denied undergoing any procedure to or experiencing any injury involving his right knee prior to the February 11, 2016, work accident. Claimant admitted that he had prior surgery to his right leg but that this was to the shin area, about three inches below the knee.

Claimant testified that the procedure left a visible scar. The arbitrator, upon being shown the mark, described it as "a faint scar 3, 3 and a half inches below the knee." A VA record dated July 2005 references that in January 2002, claimant had "two lipomas [(benign fatty tumors)] removed from his right lower leg" and that he "currently has one visible scar about 1 inch by 1/3 inch wide below his right kneecap." The scar is described as having "a lighter complexion" and being "nontender and nonadherent to the underlying tissue." Among the impressions of the doctor at that time was "a residual scar for the removal of a lipoma on [claimant's] right leg." A VA record dated October 2008 references that claimant's past medical and surgical history was significant for lipoma removal, sinusitis, a foot injury, and an appendectomy.

¶ 11    Based on the foregoing evidence, the arbitrator concluded that claimant established by a preponderance of the evidence that a causal relationship exists between his right-knee condition of ill-being and the accident that occurred on February 11, 2016, while working for respondent. As such, the arbitrator ordered respondent to authorize the surgery prescribed by Dr. Chams.

¶ 12    The arbitrator also considered whether penalties and attorney fees should be imposed upon respondent. The arbitrator concluded that respondent "offered no good-faith arguments at trial indicating there was a genuine controversy pertaining to the payment of benefits under the Act, *i.e.*, authorizing the surgery." In this regard, the arbitrator rejected respondent's reliance on the statement from the VA record of February 13, 2016, as proof for the proposition that claimant received treatment to his right knee prior to his workplace accident, explaining that the removal of lipomas located below the kneecap more than 14 years prior to the claim at issue did not constitute evidence of claimant undergoing treatment to his knee prior to his workplace accident. Further, the arbitrator found that the VA record of February 13, 2016, was "at best ambiguous" given claimant's testimony that he had never undergone surgery to his right knee prior to the February 11, 2016, industrial accident and medical records (including other VA records) supporting claimant's testimony. The arbitrator reasoned that "[p]racticality would dictate that [r]espondent should have known" that the treatment noted in the February 13, 2016, VA record was a reference to the procedure completed in 2002 to claimant's right leg.

¶ 13    The arbitrator also emphasized that respondent offered no medical opinion that claimant's right knee condition of ill-being was not causally related to his workplace accident, such as an independent medical examination pursuant to section 12 of the Act (820 ILCS 305/12 (West 2016)) or the use of "utilization review" under section 8.7 of the Act (820 ILCS 305/8.7 (West 2016)). Concluding that there was "no contrary opinion for the need of medical intervention," the arbitrator found that, in refusing to authorize claimant's surgery, respondent "relied on speculation and ambiguity and did so in an unreasonable and vexatious manner." As such, the arbitrator found respondent liable for penalties in the amount of $6900 pursuant to section 19(*l*) of the Act (820 ILCS 305/19(*l*) (West 2016)) "for without good and just cause failing, neglecting, refusing, and unreasonably delaying payments under section 8(a) of the Act [(820 ILCS 305/8(a) (West 2016))], *i.e.*, authorizing the surgery." In addition, the arbitrator found respondent liable for attorney fees in the amount of $1380 pursuant to section 16 of the Act (820 ILCS 305/16 (West 2016)) "for engaging in frivolous claims that do not present a real controversy, and creating an unreasonable and vexatious delay by continuing proceedings in that vein." The arbitrator expressly declined to impose any penalties pursuant to section 19(k) of the Act (820 ILCS 305/19(k) (West 2016)) on the ground that "case law is clear that Section 19(k) penalties for future medical are not appropriate."

¶ 14    Respondent filed a petition for review of the arbitrator's decision with the Commission. A majority of the Commission modified the decision of the arbitrator in part but otherwise affirmed and adopted the decision and remanded the matter for further proceedings pursuant to *Thomas v. Industrial Comm'n*, 78 Ill. 2d 327 (1980). The Commission concluded that the surgery recommended by Dr. Chams was reasonable, necessary, and causally related to claimant's work-related accident. Nevertheless, relying on this court's holding in *Hollywood Casino*, 2012 IL App (2d) 110426WC, the Commission concluded that it lacked statutory authority to award penalties based on respondent's decision to revoke authorization for claimant's knee surgery. The Commission acknowledged that *Hollywood Casino* involved the assessment of penalties under section 19(k) of the Act (820 ILCS 305/19(k) (West 2016)) but found that the same holding applies "by extension" to the assessment of attorney fees and penalties under sections 16 and 19(*l*) of the Act. The Commission also observed that section 16 attorney fees are predicated on an award pursuant to section 19(k) of the Act, and since *Hollywood Casino* held that section 19(k) does not allow it to award penalties for the failure to authorize medical treatment, it follows that section 16 attorney fees are likewise not available under such circumstances. Accordingly, the Commission vacated the arbitrator's award of attorney fees and penalties.

¶ 15    Commissioner Tyrell dissented. He found the majority's reliance on *Hollywood Casino* misplaced because that case did not address the appropriateness of attorney fees under section 16 and penalties under section 19(*l*) based on a failure or delay in authorizing medical treatment. Rather, *Hollywood Casino* dealt only with the imposition of penalties for a failure or delay in authorizing medical treatment under section 19(k) of the Act. Commissioner Tyrell further concluded that the majority's reading of sections 16 and 19(*l*) of the Act was too narrow. In addition, he noted that section 16 contemplates an award of attorney fees when an insurer or its agent "has been guilty of unreasonable or vexatious delay, intentional under-payment of compensation benefits, or has engaged in frivolous defenses which do not present a real controversy." Commissioner Tyrell reasoned that denying authorization for surgery that is reasonable, necessary, and causally related to a work accident without any countervailing medical opinion or evidence other than a single, unsubstantiated reference to a prior knee surgery that claimant testified never happened was "the epitome of 'frivolous defenses which do not present a real controversy.' " As such, Commissioner Tyrell would have affirmed the arbitrator's imposition of attorney fees and penalties against respondent pursuant to sections 16 and 19(*l*) of the Act.

¶ 16    Thereafter, claimant sought judicial review of the Commission's decision. The circuit court of Lake County confirmed the decision of the Commission. This appeal by claimant followed.

¶ 17                                      II. ANALYSIS

¶ 18    On appeal, claimant argues that the Commission erred in finding that it lacked statutory authority to impose penalties pursuant to section 19(*l*) of the Act based on respondent's unreasonable delay in authorizing surgery to his right knee. In this regard, claimant's argument is twofold. First, claimant faults the Commission for relying on *Hollywood Casino* since that case dealt only with the imposition of penalties pursuant to section 19(k) of the Act. Second, claimant contends that the precedent of *Hollywood Casino* does not apply to medical treatment prescribed on or after September 1, 2011, due to amendments to the Act promulgated by the

legislature. Claimant requests that we reinstate the arbitrator's award of attorney fees pursuant to section 16 of the Act and penalties pursuant to section 19(*l*) of the Act.

¶ 19    The arguments raised by claimant involve issues of statutory construction. The cardinal rule of statutory construction is to ascertain and give effect to the intent of the legislature. *Patton v. Industrial Comm'n*, 147 Ill. App. 3d 738, 741 (1986). The best indicator of legislative intent is the words used in the statute, which should be given their plain and ordinary meaning. *In re Jose A.*, 2018 IL App (2d) 180170, ¶ 18. In the absence of a statutory definition, a court may consult a dictionary to ascertain the plain and ordinary meaning of a term. *People v. Perry*, 224 Ill. 2d 312, 330 (2007); *Will County Forest Preserve District v. Illinois Workers' Compensation Comm'n*, 2012 IL App (3d) 110077WC, ¶ 18. We may only go beyond the words of the statute itself if we cannot discern the intent of the legislature from the statutory language. See *Dodaro v. Illinois Workers' Compensation Comm'n*, 403 Ill. App. 3d 538, 545 (2010). The interpretation of a statute presents a question of law that we review *de novo*. *Gruszeczka v. Illinois Workers' Compensation Comm'n*, 2013 IL 114212, ¶ 12.

¶ 20    With the foregoing principles in mind, we first consider whether the Commission properly concluded that it lacked statutory authority to impose penalties under section 19(*l*) of the Act based on an employer's failure or delay in authorizing medical treatment. As claimant points out, in reaching this conclusion, the Commission relied on this court's decision in *Hollywood Casino*, 2012 IL App (2d) 110426WC. We too find *Hollywood Casino* instructive.

¶ 21    At issue in *Hollywood Casino* was whether the Commission had the statutory authority pursuant to section 19(k) of the Act (820 ILCS 305/19(k) (West 2006)) to assess penalties for the employer's delay in authorizing medical treatment. *Hollywood Casino*, 2012 IL App (2d) 110426WC, ¶¶ 12-21. Section 19(k) provides, in relevant part, as follows:

> "In case [*sic*] where there has been any unreasonable or vexatious *delay of payment* or intentional *underpayment* of compensation \*\*\*, then the Commission may award compensation additional to that otherwise payable under this Act equal to 50% of the amount payable at the time of such award." (Emphases added.) 820 ILCS 305/19(k) (West 2006).

Invoking the rules of statutory construction, we held that the plain language of section 19(k) prohibits the Commission from assessing penalties based on an employer's unreasonable delay in authorizing medical treatment. *Hollywood Casino*, 2012 IL App (2d) 110426WC, ¶ 18. In so holding, we observed that while the text of section 19(k) addresses "delay in payment" and "underpayment" of compensation, the plain language of the statute "says nothing about any award of additional compensation (penalties) for an employer's delay in authorizing medical treatment, even assuming *arguendo* that an employer has an obligation to give authorization in advance of medical treatment for an injured employee." *Hollywood Casino*, 2012 IL App (2d) 110426WC, ¶ 15. We also pointed out that the term "payment," which is defined as " '[t]he act of paying or giving compensation,' " does not include the giving of authorization for a service. *Hollywood Casino*, 2012 IL App (2d) 110426WC, ¶ 17 (quoting Webster's Third New International Dictionary 1659 (1981)). We acknowledged that section 8(a) of the Act (820 ILCS 305/8(a) (West 2006)) obligates employers to "provide and pay \*\*\* for all the necessary first aid, medical and surgical services, and all necessary medical, surgical, and hospital services thereafter incurred" to the extent that the services are "reasonably required to cure or relieve from the effects of the accidental injury." (Internal quotation marks omitted.) *Hollywood Casino*, 2012 IL App (2d) 110426WC, ¶ 19. We determined, however, that even if

section 8(a) is sufficiently broad so as to include a requirement that an employer authorize medical treatment for an injured employee in advance of the services being rendered, "the fact still remains that there is no provision in the Act authorizing the Commission to assess penalties against an employer that delays in giving that authorization." *Hollywood Casino*, 2012 IL App (2d) 110426WC, ¶ 19.

¶ 22        Turning to the statutory language at issue here, section 19(*l*) of the Act provides in pertinent part as follows:

> "In case the employer or his or her insurance carrier shall without good and just cause *fail, neglect, refuse, or unreasonably delay the payment* of benefits under Section 8(a) or Section 8(b), the Arbitrator or the Commission shall allow to the employee additional compensation in the sum of $30 per day for each day that the benefits under Section 8(a) or Section 8(b) have been so withheld or refused, not to exceed $10,000." (Emphasis added.) 820 ILCS 305/19(*l*) (West 2016).

Similar to *Hollywood Casino*, while section 19(*l*) addresses a failure, neglect, refusal, or unreasonable delay in the *payment of benefits*, the plain language of the statute contains no language authorizing an arbitrator or the Commission to assess penalties for an employer's failure, neglect, refusal, or unreasonable delay in *authorizing medical treatment*. We acknowledge, as claimant points out in his brief, that section 8(a) of the Act (820 ILCS 305/8(a) (West 2016)) obligates employers to "*provide and pay \*\*\** for all the necessary first aid, medical and surgical services, and all necessary medical, surgical and hospital services thereafter incurred, limited, however, to that which is reasonably required to cure or relieve from the effects of the accidental injury." (Emphasis added.) Nevertheless, as we observed in *Hollywood Casino*, neither section 8(a) nor any other provision of the Act allows the Commission to assess penalties against an employer based on a failure or delay in authorizing medical treatment. *Hollywood Casino*, 2012 IL App (2d) 110426WC, ¶ 19. Thus, the Commission did not err in vacating the section 19(*l*) penalty assessed by the arbitrator for respondent's decision to revoke authorization for surgery to claimant's right knee. And while this result may seem harsh to claimant, it is the function of the legislature, not the judiciary, to provide a penalty for those employers that unreasonably or vexatiously refuse or delay authorization for reasonable and necessary medical services required to cure or relieve an injured employee from the effects of an accidental work injury. *Hollywood Casino*, 2012 IL App (2d) 110426WC, ¶ 19.

¶ 23        Claimant allows that, at the time the events in *Hollywood Casino* occurred, the Act may not have contained language permitting the Commission to assess penalties based on an employer's failure or delay in authorizing reasonable and necessary medical treatment. He contends, however, that that statement is no longer accurate because the Act has since been amended. According to claimant, the Act now contemplates the imposition of penalties based on an employer's failure or refusal to authorize reasonable and necessary medical treatment prescribed on or after September 1, 2011. Specifically, respondent directs us to section 8.7(j) of the Act (820 ILCS 305/8.7(j) (West 2016)), emphasizing the italicized language below:

> "(j) When an employer denies payment of or refuses to authorize payment of first aid, medical, surgical, or hospital services under Section 8(a) of this Act, if that denial or *refusal to authorize complies with a utilization review program registered under this Section and complies with all other requirements of this Section, then there shall be a rebuttable presumption that the employer shall not be responsible for payment of*

*additional compensation pursuant to Section 19(k) of this Act and if that denial or refusal to authorize does not comply with a utilization review program registered under this Section and does not comply with all other requirements of this Section, then that will be considered by the Commission, along with all other evidence and in the same manner as all other evidence, in the determination of whether the employer may be responsible for the payment of additional compensation pursuant to Section 19(k) of this Act.*

The changes to this Section made by this amendatory Act of the 97th General Assembly apply only to health care services provided or proposed to be provided on or after September 1, 2011." (Emphasis added.)

According to claimant, when deciding *Hollywood Casino*, this court did not have the benefit of the italicized language "showing the clear contemplation by the legislature that penalties should be available *** as it relates to delay in authorization of prospective medical treatment." We reject claimant's position for several reasons.

¶ 24        First, contrary to claimant's position, the italicized language from section 8.7 *was* in effect at the time the events relevant to our holding in *Hollywood Casino* occurred. In *Hollywood Casino*, the claimant's doctor requested authorization for the medical procedure at issue in May 2007. *Hollywood Casino*, 2012 IL App (2d) 110426WC, ¶ 5. Section 8.7 was added to the Act as part of Public Act 94-277, and became effective July 20, 2005. Pub. Act 94-277, § 10 (eff. July 20, 2005) (adding 820 ILCS 305/8.7). Thereafter, section 8.7 was amended twice, once by Public Act 94-695, § 5 (eff. Nov. 16, 2005) and once by Public Act 97-18, § 15 (eff. June 28, 2011). The amendments to the Act made by the 97th General Assembly as part of Public Act 97-18, which applied only to health care services provided or proposed to be provided on or after September 1, 2011, did not alter the language of section 8.7(j) of the Act. See Pub. Act 97-18, § 15 (eff. June 28, 2011). Second, we see nothing in section 8.7(j) that authorizes the Commission to assess penalties against an employer based on a failure or delay in authorizing reasonable and necessary medical treatment. Like sections 19(k) and 19(*l*) of the Act, section 8.7(j) speaks to an employer's denial or refusal to authorize *payment*, not medical treatment. 820 ILCS 305/8.7(j) (West 2016) ("When an employer *denies payment* of or *refuses to authorize payment* of first aid, medical, surgical, or hospital services under Section 8(a) of this Act, *** if *that denial or refusal to authorize* does not comply with a utilization review program registered under this Section and does not comply with all other requirements of this Section, then that will be considered by the Commission, along with all other evidence and in the same manner as all other evidence, in the determination of whether the employer may be responsible for the payment of additional compensation pursuant to Section 19(k) of this Act." (Emphases added.)). Third, section 8.7(j) applies only in assessing penalties under section 19(k) of the Act. The penalties at issue here were assessed under section 19(*l*). The arbitrator expressly declined to impose penalties under section 19(k) of the Act, and claimant never challenged that finding before the Commission. See *Pietrzak v. Industrial Comm'n*, 329 Ill. App. 3d 828, 832 (2002) (noting that the failure to raise an issue before the Commission results in forfeiture).

¶ 25        Claimant complains that under the Commission's interpretation of section 19(*l*), employers and their insurance carriers could refuse to timely authorize, with impunity, reasonable and necessary medical treatment that had not yet been awarded by the Commission. While we are not unsympathetic to claimant's concerns, such issues are best directed to the legislature. We

are simply not at liberty to read into the statute any exceptions, limitations, or conditions that the legislature did not intend. *Board of Trustees of the City of Harvey Firefighters' Pension Fund v. City of Harvey*, 2017 IL App (1st) 153074, ¶ 216.

¶ 26 Claimant also requests, in the conclusion section of his reply brief, that the Commission's vacatur of attorney fees pursuant to section 16 of the Act be overturned and the arbitrator's award of same be reinstated. Not only did claimant neglect to advance this argument in his opening brief, he also fails to develop any argument or direct us to any pertinent authority in support of such a claim. Accordingly, we find this argument forfeited. See Ill. S. Ct. R. 341(h)(7) (eff. May 25, 2018) (requiring the appellant's brief to include argument "which shall contain the contentions of the appellant and the reasons therefor, with citation of the authorities" and providing that "[p]oints not argued are forfeited and shall not be raised in the reply brief, in oral argument, or on petition for rehearing"); *In re Marriage of Woodrum*, 2018 IL App (3d) 170369, ¶ 63 (noting that the failure to develop an argument and provide any authority in support of a contention results in forfeiture of the issue on appeal); *Con-Way Freight, Inc. v. Illinois Workers' Compensation Comm'n*, 2016 IL App (1st) 152576WC, ¶ 24 (noting that the failure to raise an issue in appellant's opening brief results in forfeiture).

¶ 27                                         III. CONCLUSION

¶ 28 For the reasons set forth above, we affirm the judgment of the circuit court of Lake County, which confirmed the decision of the Commission vacating the section 16 attorney fees and section 19(*l*) penalties imposed by the arbitrator. This case is remanded to the Commission for further proceedings pursuant to *Thomas*, 78 Ill. 2d 327.

¶ 29 Affirmed and remanded.

¶ 30 PRESIDING JUSTICE HOLDRIDGE, dissenting:

¶ 31 I respectfully dissent. For the reasons articulated in my dissent in *Hollywood Casino* pertaining to section 19(k) of the Act, I would also find that section 19(*l*) of the Act provides a penalty for an employer or its insurance carrier, acting without good and just cause, for failure, neglect, or unreasonable delay in authorizing necessary medical treatment for its injured employee. See *Hollywood Casino*, 2012 IL App (2d) 110426WC, ¶¶ 34-38 (Holdridge, J., dissenting). I reemphasize that the concepts of payment and authorization of medical treatment are closely intertwined and the majority's interpretation of the Act is too narrow. Last, I would find that the respondent's delay in authorizing surgery in this case fell within the scope of penalties provided by section 19(*l*) of the Act for the reasons expressed by the arbitrator. See *supra* ¶¶ 12-13. Thus, I would reverse the Commission's decision to deny penalties and reinstate the penalties imposed by the arbitrator pursuant to section 19(*l*) of the Act.